UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THELMA ALANIZ, *et al*, | § | |
| | § | |
|     Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. M-03-108 |
| | § | |
| JORGE C. ZAMORA-QUEZADA, *et al*, | § | |
| | § | |
|     Defendant. | § | |

## ORDER GRANTING IN PART SUMMARY JUDGMENT

### I.  BACKGROUND

    Before this Court is Defendants' Motion for Summary Judgment as to Plaintiff Noelia Galvan Santiago.  (Doc. 89).  Plaintiff claims that Defendants Jorge C. Zamora Quezada, M.D., individually (hereinafter "Dr. Zamora"), and Jorge C. Zamora Quezada, M.D., M.P.H., P.A., d/b/a McAllen Arthritis & Osteoporosis Center and d/b/a Arthritis & Osteoporosis Centers, discriminated against her because of her gender (sexual harassment).  (Doc. 23).[1]  More specifically, Plaintiff brings claims for *quid pro quo* sexual harassment, hostile work environment, and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code 21.001, *et seq*.  (Docs. 23, 106).

    Defendants now move for summary judgment on the grounds that the acts supporting Plaintiff's hostile work environment claim, even if true, do not rise to the level required by law.  (Doc. 89).  In addition, Defendants argue that Plaintiff cannot establish the necessary elements of her constructive discharge claim.  *Id.*

### II.  ANALYSIS

**A.  Summary Judgment Standard**

    A district court will grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56.  Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

    A party moving for summary judgment has "the initial responsibility of informing the

---

    [1] The parties stipulate that for purposes of this litigation, Dr. Zamora acted as the alter ego of Zamora, M.D., M.P.H., P.A.  (Docs. 40, 41).

district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant may meet this initial burden by submitting evidence that negates the existence of an element of the non-movant's claim or by showing that there is an absence of evidence to support the plaintiff's claim. *Id*. at 323-25.

The burden then shifts to the non-movant to "produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Frank v. Xerox Corp*., 347 F.3d 130, 135 (5th Cir. 2003)(internal citations omitted). Such evidence must establish the existence of a genuine issue and be sufficient to prevent a directed verdict against the non-movant at trial. *Celotex Corp.,* 477 U.S. at 321. While doubts and reasonable inferences regarding the facts are resolved in favor of the non-moving party, the party's conclusory allegations, which are not supported by concrete and specific facts, will not defeat summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).

### B.  Plaintiff's Factual Allegations and Summary Judgment Evidence

Plaintiff alleges that she was employed by the McAllen Arthritis & Osteoporosis Center ("the Clinic") between December 20, 2001 and May 14, 2002 as its Administrator and Personnel/Human Resources Manager. Plaintiff claims that, on or about May 9, 2002, she went to Dr. Zamora's office to discuss some memos regarding clinic procedures and protocols, as well as a matter concerning one of Dr. Zamora's employees. When Plaintiff entered the office, Dr. Zamora was standing. Dr. Zamora then sat down at a round table in his office. According to Plaintiff, Dr. Zamora asked her to sit on his lap and she refused. Dr. Zamora then rose from his seat and walked behind his desk. Plaintiff claims that Dr. Zamora then told Plaintiff that she could make extra money if she would have a relationship with him. According to Plaintiff, it was clear from the tone of his voice and the way he looked at her that he was proposing a sexual relationship. Plaintiff alleges that she declined his proposal, telling him that she was married. Dr. Zamora responded by pointing out that Plaintiff had not been married by the church yet. Dr. Zamora then asked Plaintiff if she found him attractive and she responded that she did not. According to Plaintiff, the conversation with Dr. Zamora caused her to become "very upset and extremely nervous," upon which Dr. Zamora asked her if she was afraid of him. Plaintiff denied this. Dr. Zamora walked around his desk and sat down next to Plaintiff at the round table. He then told Plaintiff that he could tell she had a lump in her throat. Plaintiff admitted this, while "struggling to stop [herself] from crying." Plaintiff testified in her deposition that Dr. Zamora

then put his head between his hands and Plaintiff asked, "'Don't you think you need some help?'" Plaintiff further testified that Dr. Zamora volunteered that he was already seeing a psychiatrist and taking medication. (Doc. 23; Doc. 89, Exs. A at 45-46, B; Doc. 106, Exs. B at 23-24, 28, 45-50, C).

Plaintiff claims that she went to the office of Mary Avila, the Clinic's Office Manager, following her meeting with Dr. Zamora. According to Plaintiff, Cesar Lopez Azuara, the Clinic's Biostatistician, was also in the office at the time.[2] Plaintiff claims that she was "upset and in a state of shock" and "shaking and crying as she complained to them about what had just occurred." (Doc. 23; Doc. 89, Ex. B; Doc. 106, Ex. B at 83-84).

According to Plaintiff, Dr. Zamora called a meeting the following day, May 10, 2002, during which he appointed Lopez as General Administrator of the Clinic. Dr. Zamora indicated in his deposition that prior to Lopez' appointment, Plaintiff, Avila, and Lopez had been "in competition" for the position of General Administrator. Plaintiff claims that Lopez' appointment had the effect of requiring employees to report to Lopez rather than to Plaintiff. Plaintiff claims that after the meeting, Dr. Zamora commented to Plaintiff, Lopez, and Felix Ramos that he could not appoint Plaintiff as General Administrator "because he would make her cry." (Doc. 23; Doc. 89, Exs. A at 53, B; Doc. 106, Exs. C, D at 71, 177).

Plaintiff further asserts that on May 14, 2002, Dr. Zamora informed her that he was not pleased with her job performance. According to Plaintiff, Dr. Zamora took away all her remaining authority and responsibilities and told her that he would decide within the next two weeks whether he would keep her as an employee or whether he would let her go. Plaintiff claims that under the circumstances she was unable to continue working for Dr. Zamora and resigned her position. (Doc. 23; Doc. 89, Ex. B; Doc. 106, Exs. B at 92, 114, C). Plaintiff's letter of resignation to Dr. Zamora, dated May 15, 2002, notes her objection to Dr. Zamora's "sexual remarks" and "sexual advances." (Doc. 89, Ex. C). However, the letter also cites other reasons for her resignation, including Dr. Zamora's "inconsistent orders," "irrational" temper, "demeaning and degrading" attitude towards discipline, "radical decisions," and lack of professionalism. *Id.*

Plaintiff further alleges that prior to the incident on May 9, 2002, Dr. Zamora used Plaintiff to terminate another employee, Thelma Alaniz, following Alaniz' complaints against Dr. Zamora for sexual harassment. (Doc. 106; Doc. 106, Exs. B at 60-65, C, D at 32, 191). Plaintiff claims that she did not realize that she had unwittingly played a role in Alaniz' unlawful termination until after Dr. Zamora sexually harassed Plaintiff. (Doc. 106; Doc. 106, Ex. C).

## C. Hostile Work Environment

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., it is unlawful, in relevant part, for an employer to discharge any individual or otherwise discriminate against any

---

[2] Dr. Zamora testified that prior to becoming the Clinic's General Administrator, Lopez worked as the Clinic's Clinical Epidemiologist and Personal Assistant to Dr. Zamora. (Doc. 106, Ex. D at 71). Lopez testified that during the time that Lopez worked with Plaintiff, Lopez was "doing more of the stats." (Doc. 106, Ex. E at 24).

3

individual on the basis of sex. 42 U.S.C. § 2000e-2(a)(1).[3] It is well-established that a plaintiff may show a violation of Title VII by proving that discrimination based on gender, *i.e.*, sexual harassment, has created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In this Circuit, a claim for hostile work environment based on sexual harassment requires the plaintiff to prove five factors: (1) membership in a protected group; (2) subjection to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a "term, condition, or privilege of employment," *i.e.*, the sexual harassment was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Jones v. Flagship Intern.*, 793 F.2d 714, 719-20 (5th Cir. 1986). Defendants move for summary judgment on the sole ground that the acts alleged by Plaintiff, even if true, were not sufficiently pervasive so as to alter the conditions of her employment and create an abusive working environment. (Doc. 89).

Courts must determine whether an employer has created a hostile or abusive working environment by looking to *all* of the circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," although no single factor is required. *Id.* To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Shepherd v. Comptroller of Pub. Accounts of the State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999).

Here, Plaintiff has not alleged that Dr. Zamora engaged in *frequent* acts of sexual harassment against her. Specifically, Plaintiff describes one incident during which Dr. Zamora verbally proposed a sexual relationship and made other comments to Plaintiff concerning her marriage, whether she found him attractive, and whether she was scared of him; a subsequent incident during which Dr. Zamora appointed another employee as General Administrator, alluding to Plaintiff's propensity to "cry" as the reason he could not appoint her to this position; subsequent comments by Dr. Zamora to Plaintiff concerning his dissatisfaction with Plaintiff's job performance and his intent to decide within two weeks whether to keep Plaintiff as an employee; and Plaintiff's "realization" that she had been used by Dr. Zamora to unlawfully terminate another employee who had complained of sexual harassment by Dr. Zamora. (Docs.

---

[3] Under the Texas Commission on Human Rights Act (TCHRA), Tex. Labor Code 21.001, *et seq.*, it is unlawful for an employer to discriminate based on race, color, disability, religion, sex, national origin, or age. Tex. Lab. Code § 21.051. TCHRA is modeled after federal law with the purpose of executing the policies set forth in Title VII. *E.g.*, *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 131 (Tex.App.–Houston 1999). As such, TCHRA follows the Title VII legal standards relevant to discrimination claims. *See*, *e.g.*, *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

4

23, 89, 106).[4]  In other words, Plaintiff complains of one incident and its apparent repercussions, not the "extensive, longlasting, unredressed, and uninhibited sexual threats or conduct" that are the hallmark of an actionable hostile environment claim.  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999).

Rather than being "physically threatening or humiliating," the comments by Dr. Zamora can more likely be described as "mere offensive utterances" that do not rise to the requisite level of severity.  Although the Fifth Circuit has recognized that "[s]exually discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment," it has also noted that "the mere utterance of an...epithet which engenders offensive feelings in an employee is not alone sufficient to support Title VII liability." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)(internal quotations omitted).  In addition, a recurring point in Supreme Court opinions is that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(internal citations and quotations omitted).

As did the Court in *Shepherd*, this Court finds that the present case "involves far less objectionable circumstances than those for which courts afford relief" for hostile environment claims.  *Shepherd*, 168 F.3d at 874-75; *see Farpella-Crosby*, 97 F.3d at 805-06 (supervisor's verbal remarks sufficient to support hostile environment claim where supervisor "inquired about [plaintiff's] sexual activity or made comments similarly offensive two or three times a week" and "made many egregious comments to [the plaintiff], some in front of co-workers," which comments were "so frequent that [plaintiff] could not possibly remember each instance"); *Waltman v. Int'l Paper Co.*, 875 F.2d 468 (5th Cir. 1989)(acts of sexual harassment sufficient to create hostile environment where co-worker broadcast obscenities directed at plaintiff over public address system; supervisor urged plaintiff to have sex with co-worker, pinched her buttocks with pliers, and tried to put his hands in her back pockets; co-workers frequently made sexually suggestive comments to plaintiff; and plaintiff received over thirty pornographic notes in her locker).  In fact, the alleged conduct in the present case is more analogous, if not less severe, than the conduct in those cases in which the Fifth Circuit has found no actionable hostile environment claim to exist.  *See Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004)(no hostile environment where, over the course of a year and a half, co-worker once made a remark to plaintiff about another employee's body; once slapped her on the behind with a newspaper; "grabbed or brushed" against plaintiff's breasts and behind; once held her cheeks and tried to kiss her; asked plaintiff to come to the office early so that they could be alone; and once stood in the door of the bathroom while plaintiff was washing her hands); *Shepherd*, 168 F.3d at 872-74 (no hostile work environment where, over the course of more than a year, co-worker commented on plaintiff's appearance; attempted to look under plaintiff's dress and down her clothing; touched her arm; and suggested that plaintiff sit on his lap).

---

[4] Plaintiff also attempts to support her hostile environment claim by pointing to allegations that Dr. Zamora frequently intimidated and verbally degraded his employees.  (Doc. 106; Doc. 106, Exs. B at 81-82, C, F at 210, 245-47).  However, it appears that such behavior by Dr. Zamora affected all employees, not only Plaintiff.  In addition, such conduct does not in itself evince what is at issue in this case–that is, harassment on the basis of gender, *i.e.*, sexual harassment.

5

Although at first blush it appears evident that Dr. Zamora's conduct, if true, unreasonably interfered with Plaintiff's work performance, the alleged correlation between Plaintiff's rejection of Dr. Zamora's sexual proposition and her subsequent "demotion" provides less support for a hostile environment claim than for a *quid pro quo* sexual harassment claim.  In other words, Plaintiff's allegations and the summary judgment evidence presented to this Court may support the claim that Plaintiff's refusal to submit to Dr. Zamora's request for a sexual relationship resulted in a "tangible employment action"–that is, an action that "constitutes a significant change in employment status, such as hiring, failing to promote, reassignment with significantly different responsibilities, or a decision causing change in benefits," but do not support her hostile environment claim.  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752-54 (1998).

Notably, the Fifth Circuit has recognized that "[a]ll of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." *Indest*, 164 F.3d at 264.  Here, Plaintiff essentially complains of one incident of sexual harassment and its repercussions, rather than a work atmosphere permeated with acts of sexual harassment that affected the conditions of her employment.  As Plaintiff's live Complaint states that "[Plaintiff was a victim] of sexual harassment and 'Quid Pro Quo' sexual harassment," and Defendants have not moved for summary judgment on such claim, Defendants' motion does not dispose of the entirety of Plaintiff's case.  (Docs. 23, 106).  However, as the Court finds that Dr. Zamora's alleged behavior does not rise to the level required by law to support Plaintiff's claim for hostile work environment, the Court **GRANTS** Defendants' motion on such claim.

### D.  Constructive Discharge

In order to show that she was constructively discharged in violation of Title VII, Plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove hostile work environment.  *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992).  Therefore, as Plaintiff has failed to establish her claim of hostile work environment, her constructive discharge claim necessarily fails as well.  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 n.7 (5th Cir. 1996).  As such, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's constructive discharge claim.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's hostile work environment and constructive discharge claims.  All other relief requested is **DENIED**.

SO ORDERED this 18th day of August, 2005, at McAllen, Texas.

Randy Crane
United States District Judge