UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THELMA ALANIZ, *et al*, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. M-03-108 |
| | § | |
| JORGE C. ZAMORA-QUEZADA, *et al*, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

### I.  BACKGROUND

   Before this Court is Defendants' Motion for Summary Judgment as to Plaintiff Mary E. Tipton.  (Doc. 90).  Plaintiff claims that Defendants Jorge C. Zamora Quezada, M.D., individually (hereinafter "Dr. Zamora"), and Jorge C. Zamora Quezada, M.D., M.P.H., P.A. (hereinafter "Defendant P.A."), d/b/a McAllen Arthritis & Osteoporosis Center and d/b/a Arthritis & Osteoporosis Centers, discriminated against her because of her gender (sexual harassment).  (Doc. 37).[1]  More specifically, Plaintiff brings claims for hostile work environment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code 21.001, *et seq*.  *Id.*  Plaintiff's live Complaint also states claims for breach of contract, inducing breach of contract, assault, and battery.  *Id.*

   Defendants now move for summary judgment on Plaintiff's claims for hostile work environment, retaliation, breach of contract, assault, and battery.  In addition, Defendants contend that assuming *arguendo* that Plaintiff was subjected to unlawful discrimination under Title VII, Defendant P.A. is not liable to Plaintiff for punitive damages.  Defendants also appear to allege that Plaintiff is not entitled to lost wages as a matter of law.  (Doc. 90).

### II.  ANALYSIS

#### A.  Summary Judgment Standard

   A district court will grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56.  Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

---

   [1]  The parties stipulate that for purposes of this litigation, Dr. Zamora acted as the alter ego of Zamora, M.D., M.P.H., P.A.  (Docs. 40, 41).

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party moving for summary judgment has "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant may meet this initial burden by submitting evidence that negates the existence of an element of the non-movant's claim or by showing that there is an absence of evidence to support the plaintiff's claim. *Id*. at 323-25.

The burden then shifts to the non-movant to "produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Frank v. Xerox Corp*., 347 F.3d 130, 135 (5th Cir. 2003)(internal citations omitted). Such evidence must establish the existence of a genuine issue and be sufficient to prevent a directed verdict against the non-movant at trial. *Celotex Corp.,* 477 U.S. at 321. While doubts and reasonable inferences regarding the facts are resolved in favor of the non-moving party, the party's conclusory allegations, which are not supported by concrete and specific facts, will not defeat summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).

### B.  Plaintiff's Factual Allegations and Summary Judgment Evidence

Plaintiff alleges that she began working for Defendants on or about November 15, 2002. According to Plaintiff, she was hired as Office Manager for Defendants' Brownsville Clinic and was given the added responsibilities of Office Manager at the Edinburg Clinic in December 2002. Plaintiff also claims that Defendants entered into a janitorial contract with Plaintiff, doing business as MRT Cleaning Services, to provide cleaning services. Plaintiff claims that on or about November 20, 2002, Dr. Zamora asked Plaintiff for a friendly hug when she was saying goodbye at the end of the day. Then, Dr. Zamora surprised Plaintiff by pulling her body into a tight embrace. According to Plaintiff, "[h]is chest was to my breasts. His pelvis was to my pelvis. And he caressed my back with his hands for a very long awkward period of time." Plaintiff claims that she pushed away from Dr. Zamora to end the embrace. Plaintiff testified in her deposition that the incident left her feeling "[b]ewildered and afraid." (Doc. 37; Doc. 90, Exs. A at 84, B, E; Doc. 105, Exs. A at 83-85, B).

Plaintiff further alleges that within a week of the first incident, Dr. Zamora told Plaintiff, "I don't know how I'm going to stand seeing you every day without hugging you." At the same time, he wrapped his arms around Plaintiff while her hands were still at her chest, holding her books and notes. Plaintiff testified in her deposition that during this same incident Dr. Zamora also asked her to give him a kiss. Plaintiff claims that she turned her head away to avoid this but Dr. Zamora kissed her on the cheek before she stepped away from him. (Doc. 90, Ex. A at 89; Doc. 105, Ex. A at 87-91).

According to Plaintiff, Dr. Zamora attempted to hug and kiss Plaintiff on other occasions. Plaintiff states that Dr. Zamora would make remarks such as "Come over here. I want to give you a little hug." Plaintiff also testified in her deposition that Dr. Zamora "would hold [her]

hand to where she had to pull it away, to the point where it was uncomfortable to go into his office alone." According to Plaintiff, Dr. Zamora also made comments to Plaintiff on a daily basis that caused her to feel uncomfortable. Plaintiff explained that "[a]fter [Dr. Zamora] wanted a hug and I pulled away, he would ask if my husband was home, if he was a jealous man, if I was available to go out with him to the Yacht Club." Plaintiff further stated that Dr. Zamora would ask her "[i]f my husband was Mexican or white" and "what I was going to wear the following day." (Doc. 90, Ex. A at 92, 96-97; Doc. 105, Ex. A at 92, 96-98).

Plaintiff states that the "last act" of sexual harassment she remembers occurred between December 2 and 6, 2002, when Plaintiff approached Dr. Zamora to give him her daily report. According to Plaintiff, Dr. Zamora pulled her into a patient's room and closed the door behind him, at which time Plaintiff gave Dr. Zamora her daily report and discussed other issues with him. About twenty minutes later, Plaintiff stood up to leave the office. As Plaintiff reached to open the door, Dr. Zamora stopped her and swiftly came towards her to give her a kiss on the mouth. Plaintiff claims that she pulled away from Dr. Zamora before he could kiss her, and she immediately asked him what he was doing. Plaintiff testified in her deposition that she waved the recorder she had been using to record their meeting in front of Dr. Zamora, upon which he "pulled back surprised...and walked out." (Doc. 90, Exs. A at 92-93, C; Doc. 105, Ex. A at 92-95).

Plaintiff alleges that on or about December 6, 2002, Dr. Zamora asked her to take disciplinary action against Olga Gonzales, a receptionist supervisor for Defendants' Edinburg Clinic. During Plaintiff's meeting with Gonzales, Gonzales complained to Plaintiff that Dr. Zamora "had sexually assaulted [Gonzales], offered her money to sleep with him, offered to pay for plastic surgery, to pay for her to work out, if she would allow him to touch her." Also during this meeting, Gonzales' sister, Alma Gonzales, admitted that Dr. Zamora had sexually harassed her. Plaintiff states that she brought these complaints, as well as her own, to Human Resources Coordinator Elizabeth Jasso, after which Plaintiff and Jasso personally confronted Dr. Zamora with the complaints. According to Plaintiff, Dr. Zamora denied the allegations and "became extremely upset," scolding Plaintiff for making the complaints and telling her that she had "made things worse by confronting him." Plaintiff claims that Dr. Zamora was "very concerned about who in the office knew about the complaints." Ultimately, Dr. Zamora ordered Plaintiff and Jasso to "put it behind them and continue their work as usual." Plaintiff claims that when Jasso left, Dr. Zamora told Plaintiff that "there was some truth" to Gonzales' allegations, as he had offered to pay for a nose job for Gonzales and for her to work out because "she worked at the front and [he] wanted her to look nice for everyone." Dr. Zamora also told Plaintiff that if she was not going to be loyal to him, he would have to "think about who was going to be his next right hand." Plaintiff's secretary Melissa Aguilar testified in her deposition that after Plaintiff's meeting with Dr. Zamora, Aguilar saw Plaintiff sit down in the break room and cry. (Doc. 37; Doc. 90, Exs. B, C; Doc. 105, Exs. B, C, E, F at 42-44, 46, 60-61, 68-69, 197-209, 240-41).

Plaintiff alleges that on or about December 9, 2002, Dr. Zamora began making harassing and disrespectful comments about Plaintiff in the presence of other employees and referred to her as a "sexual harassment spy." Dr. Zamora also began to impose unreasonable deadlines on Plaintiff. In addition, Dr. Zamora, through Clinic employee Cesar Lopez Azuara, generated five

written reprimands of Plaintiff dated December 9 and 10, 2002.  These reprimands complained of Plaintiff's alleged mishandling of business matters.  Dr. Zamora, through Lopez Azuara, also prepared a memo dated December 10, 2002 which explained that "[d]ue to current events that [Plaintiff] has been made aware of, and as discussed prior with [Plaintiff]," Plaintiff's contract for janitorial services was being cancelled.  Dr. Zamora testified in his deposition that he did not know to what Lopez Azuara was referring when he wrote "current events," although he stated that "it could be that [Lopez Azuara] interpreted what happened with [Alma and Olga Gonzales] as current events."  According to Lopez Azuara, he "put in [the reprimands/memos] what [Dr. Zamora] asked me to put in them."  Plaintiff claims that she did not know of the existence of the memo purportedly cancelling her janitorial contract until after litigation in this case had commenced.  According to Plaintiff, "[t]he only 'current events' of which I was aware that could have caused Dr. Zamora to want to terminate the contract was my opposition to his sexual harassment of Olga Gonzales and my own complaints of sexual harassment.  I had received no complaints relative to the cleaning services that were being provided."  (Doc. 37; Doc. 90, Exs. B, C; Doc. 105, Exs. B, G at 133-34, Ex. 8-Reprimands/Memos, H at 106, 260-62).

Allegedly due to the stress of the situation with Dr. Zamora, Plaintiff was absent from work on December 11 and 12, 2002.  Plaintiff claims that when she finally reached Dr. Zamora by phone on December 12, 2002 to explain her absence, the conversation "degenerated into a shouting match" so that by the end of the conversation Plaintiff believed her employment had been terminated.  Lopez-Azuara testified in his deposition that he was present during portions of Dr. Zamora's conversation with Plaintiff that evening and that Dr. Zamora told Plaintiff over the phone that she had been fired.  Angelica Solis, who states in her affidavit that she was also present for portions of the December 12, 2002 phone conversation between Dr. Zamora and Plaintiff, claims that Dr. Zamora offered Solis the position of Office Manager on the morning of December 12, 2002.  (Doc. 90, Ex. C; Doc. 105, Exs. B, D, E at 78, F at 77-78, G at 123-24, J).

Plaintiff claims that when Dr. Zamora's wife requested that Plaintiff attend a meeting for employees on December 13, 2002, Plaintiff believed that her job had been reinstated and attended the meeting.  Felix Ramos, then an employee of Defendants, indicated in his deposition that he became concerned when he observed Plaintiff at the meeting because he knew that Plaintiff's employment had been terminated by Dr. Zamora.  Ramos called Lopez Azuara to relay this news and Lopez Azuara told Ramos to call the police to remove Plaintiff from the premises.  Plaintiff claims that after the meeting Dr. Zamora's wife told Plaintiff to leave and that Dr. Zamora had instructed Lopez Azuara to call the police to remove her from the premises.  Plaintiff states that she then understood that she had been "fired for sure."  At the direction of Dr. Zamora, Solis changed the locks on the Brownsville Clinic on or about December 14, 2002 so that Plaintiff and her cleaning crew would no longer have access to the building.  (Doc. 37; Doc. 90, Exs. B, C; Doc. 105, Exs. B, D, F at 76-77, G at 124-25, J, K at 112-13).

## C.  Hostile Work Environment

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., it is unlawful, in relevant part, for an employer to discharge any individual or otherwise discriminate against any

individual on the basis of sex. 42 U.S.C. § 2000e-2(a)(1).[2] It is well-established that a plaintiff may show a violation of Title VII by proving that discrimination based on gender, *i.e.*, sexual harassment, has created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In this Circuit, a claim for hostile work environment based on sexual harassment requires the plaintiff to prove five factors: (1) membership in a protected group; (2) subjection to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a "term, condition, or privilege of employment," *i.e.*, the sexual harassment was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Jones v. Flagship Intern.*, 793 F.2d 714, 719-20 (5th Cir. 1986). Defendants move for summary judgment on the sole ground that the acts alleged by Plaintiff, even if true, were not sufficiently pervasive so as to alter the conditions of her employment and create an abusive working environment. (Doc. 90).

Courts must determine whether an employer has created a hostile or abusive working environment by looking to *all* of the circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," although no single factor is required. *Id.* To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Shepherd v. Comptroller of Pub. Accounts of the State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999). Notably, the Fifth Circuit has recognized that "[a]ll of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." *Indest*, 164 F.3d at 264.

Taking Plaintiff's factual allegations and supporting summary judgment evidence as true, as this Court is asked to do for purposes of this motion, the Court cannot agree with Defendants that Dr. Zamora's acts of sexual harassment were infrequent. (Doc. 90). Rather, Plaintiff alleges that Dr. Zamora made unwanted physical contact with Plaintiff on at least three occasions, made other requests and attempts to hug and kiss Plaintiff against her will, and made harassing comments to Plaintiff on a daily basis.

The Fifth Circuit has recognized that "[s]exually discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment," although it has also noted that "the mere utterance of an...epithet which engenders offensive feelings in an employee is not

---

[2] Under the Texas Commission on Human Rights Act (TCHRA), Tex. Labor Code 21.001, *et seq.*, it is unlawful for an employer to discriminate based on race, color, disability, religion, sex, national origin, or age. Tex. Lab. Code § 21.051. TCHRA is modeled after federal law with the purpose of executing the policies set forth in Title VII. *E.g.*, *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 131 (Tex.App.–Houston 1999). As such, TCHRA follows the Title VII legal standards relevant to discrimination claims. *See*, *e.g.*, *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

alone sufficient to support Title VII liability." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)(internal quotations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(internal citations and quotations omitted). In *Farpella Crosby*, the Fifth Circuit found that a supervisor's verbal remarks to the plaintiff were sufficient to support the plaintiff's hostile environment claim where the supervisor "inquired about [the plaintiff's] sexual activity or made comments similarly offensive two or three times a week" and "made many egregious comments to [the plaintiff], some in front of co-workers," which comments were "so frequent that [the plaintiff] could not possibly remember each instance." *Farpella-Crosby*, 97 F.3d at 805-06. In cases in which the Fifth Circuit has found no actionable hostile environment claim to exist, the alleged offensive conduct has included instances of minimal, non-severe physical contact and verbal comments. *See Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004)(no hostile environment where, over the course of a year and a half, co-worker once made a remark to plaintiff about another employee's body; once slapped her on the behind with a newspaper; "grabbed or brushed" against plaintiff's breasts and behind; once held her cheeks and tried to kiss her; asked plaintiff to come to the office early so that they could be alone; and once stood in the door of the bathroom while plaintiff was washing her hands); *Shepherd*, 168 F.3d at 872-74 (no hostile work environment where, over the course of more than a year, co-worker commented on plaintiff's appearance; attempted to look under plaintiff's dress and down her clothing; touched her arm; and suggested that plaintiff sit on his lap).

Here, like the plaintiff in *Farpella-Crosby*, Plaintiff likewise complains of harassing comments so numerous that she cannot recall each incident specifically. Although the comments made by Dr. Zamora to Plaintiff are arguably less "egregious" than those made to the plaintiff in *Farpella-Crosby*, Plaintiff also complains of at least three specific instances of unwanted physical contact of a sexual nature and additional requests and attempts by Dr. Zamora to hug and kiss Plaintiff.[3] In short, Plaintiff's allegations and supporting summary judgment evidence illustrate a work environment permeated with sexually harassing conduct that remained unredressed and uninhibited until the end of Plaintiff's employment. The record supports Plaintiff's allegations that Dr. Zamora's conduct was subjectively offensive, and this Court cannot say that a reasonable person would not have felt similarly.

In addition, the record supports Plaintiff's assertion that Dr. Zamora's conduct, if true, unreasonably interfered with Plaintiff's work performance. Plaintiff claims that Dr. Zamora's continuing sexual harassment caused her to lose weight "from the stress of the situation," although she continued to work for Dr. Zamora because she "needed an income and needed [her]

---

[3] For example, Farpella-Crosby complained that her supervisor, Jose Blanco, made "frequent comments attributing Farpella-Crosby's large number of children to a proclivity to engage in sexual activity. Blanco repeatedly commented that he 'knew what she liked to do' because she had seven children and that she 'must not have a television.' At a baby shower...for another employee, Blanco joked to the group that Farpella-Crosby 'doesn't know how to use condoms.' Blanco also frequently inquired about Farpella-Crosby's sexual activity. He would often question her and Denise Vujevic, her co-worker, about where they had been the night before (while off duty), whether they had taken men home, and whether they 'got any.' Farpella-Crosby and Vujevic both testified that Blanco made similar comments two or three times a week. Farpella-Crosby testified that she could not possibly remember each instance." *Farpella-Crosby*, 97 F.3d at 805.

job." (Doc. 106, Exs. B, F at 68). Although Plaintiff's job apparently required her to meet with Dr. Zamora to give him her "daily review of [her] daily tasks," Plaintiff testified in her deposition that Dr. Zamora's comments and his attempts to hold her hand and hug her made her "uncomfortable to go into his office alone." (Doc. 106, Ex. A at 88, 98). According to Plaintiff, she "would try to go in with someone else, if possible, or have the door open." (Doc. 106, Ex. A at 98). As described *supra*, Plaintiff was allegedly reduced to tears after the incident in which Plaintiff and Jasso confronted Dr. Zamora with Gonzales and Plaintiff's complaints of sexual harassment. Plaintiff claims, and the summary judgment evidence does not controvert, that following this meeting Dr. Zamora made harassing comments to Plaintiff, made unreasonable work demands on her, and generated five written reprimands of Plaintiff complaining of her mishandling of certain business matters, upon which Plaintiff became physically ill and unable to report to work for about two days.

After considering all of the circumstances, the Court finds that Defendants have not shown that Dr. Zamora's alleged behavior does not rise to the level required by law to support Plaintiff's claim for hostile work environment. As such, the Court **DENIES** Defendants' motion on such claim.[4]

### D. Retaliation

To establish a *prima facie* case of retaliation, the plaintiff must show (1) that she engaged in an activity protected under Title VII; (2) that an adverse employment action occurred; and (3) that there is a causal link between the protected activity and the adverse employment action. *E.g.*, *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003). Defendants move for summary judgment on Plaintiff's retaliation claim on the grounds that (1) Plaintiff did not engaged in a "protected activity"; and (2) Plaintiff cannot show a "causal link" between the alleged protected activity and her termination. (Doc. 90).[5]

An employee has engaged in a "protected activity" under Title VII if she has opposed any

---

[4] Plaintiff argues that should this Court find that Defendants are entitled to summary judgment on Plaintiff's hostile environment claim, Plaintiff has nonetheless stated a claim for *quid pro quo* sexual harassment. (Doc. 105). As Plaintiff's live Complaint does not specifically plead such claim, and as Plaintiff's hostile environment claim has survived Defendants' motion, the Court will not consider whether a genuine issue of material fact exists regarding any claim for *quid pro quo* sexual harassment. (Doc. 37).

[5] In order for an act to constitute an adverse employment action for purposes of a Title VII retaliation claim, such act must be an "ultimate employment decision" such as "'hiring, granting leave, discharging, promoting, or compensating.'" *Ackel v. Nt'l Communications*, 339 F.3d 376, 385 (5th Cir. 2003). Defendants do not specifically dispute that Plaintiff's employment was terminated, although they do state, without more, that "Defendant has a legitimate non-discriminatory reason for termination (even though Defendant did not terminate Plaintiff)." (Doc. 90). Plaintiff has submitted to this Court the deposition testimony of Dr. Zamora in which he stated that Plaintiff was not terminated; rather, "[s]he abandoned her job." (Doc. 105, Ex. H at 88). However, in reviewing all of the summary judgment evidence before it, the Court finds that a genuine issue of material fact exists as to whether Defendants terminated Plaintiff's employment.

unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a).[6] A plaintiff may show that she "opposed" an unlawful employment practice by demonstrating that she used her employer's internal administrative process to do so. *See Fierros v. Tex. Dept. of Health*, 274 F.3d 187, 194 (5th Cir. 2001)(citing *Dollis v. Rubin*, 77 F.3d 777, 779, 781 (5th Cir. 1995)(internal discrimination complaint is protected activity under Title VII); *Lih v. Veneman*, 2004 WL 1778806 at *4 (N.D.Miss. 2004)(informal complaints to superiors constitute protected activity under Title VII).

Here, Plaintiff claims that she engaged in the protected activity of "asserting the rights of subordinate employees under the statutes and by opposing conduct and practices of Defendants which are unlawful under such statutes." (Doc. 37). More specifically, Plaintiff claims that a fellow employee, Gonzales, complained to Plaintiff that Dr. Zamora had sexually harassed Gonzales. Plaintiff brought Gonzales' complaints, as well as Plaintiff's own complaints concerning Dr. Zamora's acts of sexual harassment against Plaintiff, to the attention of Human Resources Coordinator Jasso. Plaintiff and Jasso then personally confronted Dr. Zamora with the complaints. The Court finds that Gonzales' internal complaints to her employer's Human Resources Coordinator and then to her employer concerning Dr. Zamora's sexual harassment of Gonzales and Plaintiff constitute "protected activity" as that term is defined by law.

If, as here, the plaintiff seeks to establish causation by circumstantial evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *Fierros*, 274 F.3d at 191. Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing her *prima facie* case of retaliation. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). At this threshold stage, the standard for satisfying the causation element is "much less stringent" than a "but for" causation standard–that is, the plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element." *Id.*; *Long v. Eastfield College*, 88 F.3d 300, 305 n. 4 (5th Cir. 1996). Notably, "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). In addition, the "causal link" is established where the employment decision is based in part on knowledge of the employee's protected activity. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

Here, Plaintiff has alleged, and in fact the summary judgment evidence does not controvert, that only a matter of days elapsed between Plaintiff's protected activity and Plaintiff's termination. In addition, the summary judgment evidence does not controvert Plaintiff's allegation that during this short period of time, Dr. Zamora referred to Plaintiff as a "sexual harassment spy," gave her unreasonable work demands, and filed five allegedly unwarranted

---

[6] The plaintiff must demonstrate only that she had at least a "reasonable belief" that the practice she opposed was unlawful. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981). The Court must consider the objective reasonableness of the plaintiff's belief, and not the subjective, or good faith, nature of her belief. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000). Defendants do not dispute that Plaintiff had an objectively reasonable belief that the practice she opposed–that is, Dr. Zamora's alleged sexual harassment of Gonzales and Plaintiff–was an unlawful practice under Title VII. (Doc. 90).

reprimands criticizing Plaintiff's handling of business matters. In addition, Dr. Zamora himself testified that the memo written at his direction that purportedly cancelled Plaintiff's janitorial contract "[d]ue to current events that [Plaintiff] has been made aware of" may have referred to "what happened with [Alma and Olga Gonzales]." At this stage of the inquiry, the above suffices to raise a genuine issue of material fact regarding whether a causal link exists between Plaintiff's protected activity and the adverse employment action taken. Therefore, the Court finds that Plaintiff has stated a *prima facie* case of retaliation.

Once Plaintiff has established her *prima facie* case of retaliation, the burden shifts to Defendants to demonstrate a legitimate, non-discriminatory reason for the adverse employment action. *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 330 (5th Cir. 2004); *see McDonnell Douglas*, 411 U.S. at 802. Although Defendants blandly state that they "have a legitimate non-discriminatory reason for termination," they provide no argument or evidence to support such statement. (Doc. 90). Plaintiff herself has provided the Court with Dr. Zamora's testimony that Plaintiff "abandoned her job"; however, this self-serving statement, without more, does not enable Defendants to meet their burden. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim.

### E.  Breach of Contract

Plaintiff's live Complaint also alleges that she "was further economically retaliated against (for engaging in protected activity) in that her janitorial contract with Defendants to provide cleaning services was summarily breached and cancelled." (Doc. 37). Defendants move for summary judgment on such claim "because [Plaintiff] cannot establish that an independent contract is protected under Title VII." (Doc. 90). Plaintiff acknowledges that her cause of action for breach of contract is not in itself actionable under Title VII; rather, the alleged breach of Plaintiff's janitorial contract provides support for Plaintiff's retaliation claim. Therefore, to the extent that Plaintiff has attempted to allege a cause of action for breach of contract under Title VII, the Court **GRANTS** Defendants' Motion for Summary Judgment as to such claim.

### F.  Assault and Battery

Defendants also move for summary judgment on Plaintiff's common law claims for assault and battery on the grounds that the Texas Supreme Court's recent case, *Hoffman-La Roche v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), requires the dismissal of such claims. (Doc. 90). Plaintiff concedes that *Hoffman-La Roche* precludes her claims for common law assault and battery. (Doc. 105). Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment on such claims.

### F.  Punitive Damages

Defendants further contend that assuming *arguendo* that Plaintiff was subjected to unlawful discrimination under Title VII, Defendant P.A. is not liable to Plaintiff for punitive damages. (Doc. 90). Defendants appeal to *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544 (1999)(internal quotations omitted), in which the Supreme Court noted that "[h]olding employers liable for punitive damages when they engage in good faith efforts to comply with Title VII" may violate

the principle that "it is improper ordinarily to award punitive damages against one who himself is personally innocent and therefore liable only vicariously." The Court in *Kolstad* further held that "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." *Kolstad*, 527 U.S. at 544. The Fifth Circuit has found "good faith" efforts to exist where the employer "had a well-publicized policy forbidding sexual harassment, gave training on sexual harassment to new employees, established a grievance procedure for sexual harassment complaints, and initiated an investigation of the plaintiffs' complaints." *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 477 (5th Cir. 2002).

Although Defendants argue that Defendant P.A. implemented a sexual harassment policy and distributed the policy to its employees, including Plaintiff, the Court finds that a genuine issue of material fact exists as to whether the policy had any practical effect. (Doc. 90; Doc. 90, Ex. at 57-58). Plaintiff notes that the policy states that "A&O will investigate any complaint of sexual harassment and will take immediate and appropriate disciplinary action if sexual harassment has been found within the workplace." (Doc. 105; Doc. 105, Ex. N at 14). In addition, the policy states that "[a]ny employee found to have harassed a fellow employee or subordinate would be subject to severe disciplinary action up to and including termination." *Id.* Here, Lopez Azuara testified in his deposition that upon being confronted with the sexual harassment complaint of employee Thelma Alaniz, Dr. Zamora assigned employee Mary Avila to look into the complaint. (Doc. 105, Ex. G at 69). Lopez Azuara further testified that he did not know if Avila or anyone else had the authority to fire or censure Dr. Zamora if Alaniz' complaint against Dr. Zamora was correct. (Doc. 105, Ex. G at 70-71). In fact, Lopez Azuara admitted that he hired and fired employees only at Dr. Zamora's direction. (Doc. 105, Ex. G at 71-72). The Court finds that here, where the evidence does not controvert that Dr. Zamora, the individual alleged to have sexually harassed Plaintiff in violation of Title VII, was not merely a managerial agent of Defendant P.A. but, in essence, the alter ego of Defendant P.A. and the ultimate decision-maker regarding any complaints of sexual harassment, Plaintiff has raised a genuine issue of material fact as to whether Defendant P.A. made good faith efforts to comply with Title VII. The Court therefore finds that Plaintiff is not as a matter of law precluded from seeking punitive damages against Defendant P.A. in the present case.

### G. Lost Wages

Defendants' Motion for Summary Judgment also includes an allegation that Defendants are entitled to judgment as a matter of law on Plaintiff's claims for lost wages as Plaintiff failed to use reasonable diligence to obtain substantially equivalent employment after her termination in December 2002. (Doc. 90). However, Defendants do not provide any argument or evidence in support of such contention. Therefore, the Court **DENIES** Defendants' Motion for Summary Judgment as to such claim.

### III. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendants' Motion for Summary Judgment on Plaintiff's claims for hostile work environment and retaliation. To the extent that Plaintiff has attempted to allege a cause of action for breach of contract under Title VII, the

Court **GRANTS** Defendants' motion as to such claim.  The Court further **GRANTS** Defendants' motion as to Plaintiff's claims for common law assault and battery.  The Court further finds that Plaintiff is not as a matter of law precluded from seeking punitive damages against Defendant P.A. in the present case, nor is Plaintiff precluded from seeking lost wages.

SO ORDERED this 8th day of September, 2005, at McAllen, Texas.

_____
Randy Crane
United States District Judge